UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

STUART M. WEG                          CIVIL ACTION

VERSUS                                 NO: 10-4198

MARLIN N. GUSMAN, ET AL.               SECTION: R(2)

## ORDER AND REASONS

### I.    BACKGROUND

Stuart Weg, an Orleans Parish Public Defender, seeks damages against three deputies of the Orleans Parish Sheriff's Office in their personal capacities under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights and for violations of Louisiana state law.  Weg alleges that the deputies without cause tackled him from behind, placed him in a choke hold, hit and kicked him in the head, and later arrested him.  Weg further alleges that the deputies violated his constitutional rights by using excessive force, failing to intervene to stop the excessive force, committing a false arrest, initiating a prosecution using false testimony, and committing civil conspiracy.  Weg also alleges that defendants committed a number of state law torts in the process.  Weg maintains that Sheriff Marlin N. Gusman is liable to him under the principle of *respondeat superior* for the state law torts of his deputies.

The lawsuit culminated in a one day bench trial.  After considering the testimony, including the credible testimony of

independent witnesses, the Court finds that Weg failed to establish that defendants committed any constitutional or state law torts against him.  The evidence revealed that defendants had probable cause to arrest Weg after he threw an elbow at one of the deputies who escorted him out of a courtroom at the order of the presiding judge.  The Court further finds that the deputies used no greater force than was reasonable under the circumstances to restrain Weg, who resisted being handcuffed.  This finding disposes of Weg's constitutional claims as well as his attendant state law claims.  These determinations are based on the following findings of fact and conclusions of law.  To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such.  To the extent a conclusion of law constitutes a finding of fact, the Court adopts it as such.

## II.  FINDINGS OF FACT

On December 4, 2009, Weg acted as Section Defender in the Courtroom of Section C of the Orleans Parish Criminal District Court.  One of the docketed matters that day was *State of Louisiana v. Tyrone Claborne*, No. 486-465(C).  Judge Benedict Willard, the Section C presiding judge, had issued a *capias* for Claborne for failing to appear in court.  Assistant District Attorney Stephen Collins, who worked in Section B of the Criminal District Court, had been notified by a drug court counselor that

2

the person arrested under the *capias* was not Claborne, but his brother Tyrone Claiborne, a Section B defendant participating in the drug court's outpatient program.[1]  Collins contacted the New Orleans Police Department to verify that the individual brought in under the *capias* was Claborne.  Collins then arranged for the matter to be docketed in Section C, where Collins made an appearance.

When Collins arrived in Section C, Weg was at the defense table.  Collins asked Judge Willard to lift the *capias* so that Claborne could go back to drug court in Section B, where Judge Lynda Van Davis presided.  Collins testified that Weg interjected and also asked Judge Willard to lift the *capias*.  Collins further testified that "Judge Willard specifically was a little upset because this had happened before with these same people, where brothers had been arrested under different capiases."[2]  Weg continued to urge Judge Willard to release Claborne and requested a hearing to determine which brother was being held.  Judge Willard told Weg that the court would recall the case when Claborne appeared in court.[3]  Collins then left the Section C courtroom and returned to the Section B courtroom of Judge Van Davis.

---

[1]     Test. of Stephen Collins.

[2]     *Id.*

[3]     Pla.'s Ex. A at 18:3-4.

3

Collins told Judge Van Davis that Judge Willard did not lift the *capias*. Collins returned to the Section C courtroom with Judge Van Davis. Collins said that the courtroom was "more heated" when he returned.[4] The court had moved onto another matter, but the public defender on that case was not in the courtroom. Judge Willard said to Weg "Go ahead and find her [the other public defender], Mr. Weg, that's the Court's order, all right. Please, that's the Court's order."[5] Weg did not leave and insisted on his right to remain in the courtroom.[6] The court again told Weg "that's the court's order, Mr. Weg. Go find her."[7] When Weg continued to refuse to leave, Judge Willard told the deputies "Can y'all go do y'all jobs. I asked y'all four times."[8] Weg remained at the podium.[9]

At that point, Deputy Gray approached Weg and told him he had to leave the courtroom.[10] Collins testified that Weg was yelling that he had a right to be in the courtroom. Judge Van

---

[4]    Test. of Stephen Collins.

[5]    Pla.'s Ex. B at 3:25-26.

[6]    Test. of Stephen Collins.

[7]    Pla.'s Ex. B at 3:32-4:1.

[8]    *Id.* at 4:8-9.

[9]    Test. of Judge Van Davis; Test. of Stuart Weg; Test. of Stephen Collins; Test. of Robert Jenkins.

[10]    Test. of Deputy Gray; Test. of Robert Jenkins.

4

Davis and Robert Jenkins, a criminal defense attorney, testified that Deputy Gray touched Weg's elbow to escort him out of the courtroom.  Weg appeared to freeze when Deputy Gray approached him, and Collins and Jenkins both testified that Weg would not walk out of the courtroom on his own accord and that Deputy Gray had to escort him.  On the way out, Weg planted his feet, and Gray had to nudge him forward to guide him toward the door of the courtroom.[11]  Despite the court's obvious order, Weg admits arguing with Deputy Gray about whether he had been ordered to leave.[12]  Although Gray nudged Weg with his hands, several witnesses to this part of his exit testified that Gray was not violently touching, pulling, or dragging the resistant Weg out of the courtroom.[13]

As Weg and Deputy Gray approached the rear door of the courtroom, Gray testified that Weg "went swinging his right arm at me saying get the F off me."[14]  Gray's testimony was corroborated by independent witnesses.  Both Collins and Jenkins confirmed that as Weg approached the door he jabbed his elbow

---

[11]    Test. of Stephen Collins.

[12]    Test. of Stuart Weg ("My voice was raised when the deputy said the judge ordered me to leave.  I said he didn't order me to leave; he ordered me to find another lawyer.").

[13]    Test. of Judge Van Davis; Test. of Stephen Collins; Test. of Robert Jenkins.

[14]    Test. of Deputy Gray.

toward Deputy Gray.  Although neither Collins nor Jenkins could testify positively that Weg's elbow made contact with Deputy Gray, they both perceived the move as an aggressive act.[15] Deputy Gray testified that he ducked to avoid Weg's elbow, but that Weg made contact with him.  Deputy Livingston, who was entering the courtroom as the door opened for Weg, testified that he saw Weg strike at Deputy Gray with his elbow.  Weg, on the other hand, testified that he never attempted to strike or elbow Deputy Gray, and that he thought Deputy Gray was going to push his face into the door jam at the rear of the courtroom.

The Court does not credit Weg's testimony and finds that he aggressively elbowed Deputy Gray.  First, Weg's testimony is against the weight of the credible, independent testimony. Second, Weg was highly agitated, whereas Deputy Gray was not, and Weg had been resisting Gray's efforts to escort him out.  Third, the Court finds it unlikely that Gray would try to push Weg's face into the door jam at the back of a courtroom that was, by all accounts, packed with potential witnesses.  Last, Weg indicated that when he departed the same courtroom before under the judge's order, he came to no harm when he left voluntarily.

After Weg threw an elbow at Deputy Gray, Deputy Gray and Deputy Livingston testified that Livingston grabbed Weg around the chest from behind and brought him to the floor in the

---

[15]    Test. of Stephen Collins; Test. of Robert Jenkins.

6

anteroom outside the rear door of the courtroom.  Livingston said he restrained Weg in order to protect the officers and spectators and to avoid a fistfight.  Livingston and Gray testified that Weg continued to resist when they attempted to cuff him.  Both denied hitting or kicking Weg and said they told him to let them cuff him, but he resisted.

Although Weg testified that Deputy Livingston grabbed him by the throat in a choke hold, and that he was hit repeatedly in the head while an officer was on his back, the Court does not credit his testimony.  First, after asserting in his complaint that he was kicked, Weg dropped this contention in the pretrial order and at trial.  Second, Weg provided no evidence of injuries to his throat, his head, or his back.  Although Weg offered medical records to demonstrate the extent of his injuries, there was no evidence of injuries to any of these parts of his body.  Rather, Weg suffered bruised ribs, which is consistent with being grabbed around the chest and brought down.  Weg's only other injury was a minor bruise on his arm.  Third, that Weg continued to resist the officers physically is entirely consistent with his conduct leading up to the takedown.  Fourth, Weg admitted that once he was handcuffed, the officers placed him on a bench in the anteroom.[16]  Weg does not contend that he was exposed to further blows.  This undermines the idea that the deputies were

---

[16]    Test. of Stuart Weg.

gratuitously beating him up and not simply trying to subdue him.[17]

After the defendants placed Weg in handcuffs, they brought him to an interview room.  Deputy Gray met with his lieutenant to discuss the incident and what charges to bring.[18]  Deputy Gray returned to the interview room, where he *Mirandized* Weg and read him his charges, three violations of the New Orleans Municipal Code: Battery, § 54-96; Resisting an Officer, § 54-441; and Criminal Trespass, § 54-153(a).  Deputy Gray and Deputy Livingston testified that Weg apologized and asked if he could work something out.[19]  Weg did not complain of injuries to the defendants at any time.

## III. CONCLUSIONS OF LAW

### A.   Section 1983

In order to prevail on a Section 1983 claim, Weg must demonstrate that "the conduct complained of [was] committed by a person acting under color of state law; and second, this conduct

---

[17]    Although Weg called Gloria Roche to testify, the Court does not find her credible.  She gave testimony that was flatly contradicted by all of the other witnesses.  She also testified that she was in court that day with her husband, who was charged with simple burglary.  In her testimony and demeanor, Roche demonstrated an obvious animus toward Judge Willard and the courtroom staff.

[18]    Test. of Deputy Gray; Test. of Deputy Livingston.

[19]    Test. of Deputy Gray.

must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Jackson v. State of La.*, 980 F.2d 1009, 1010-11 (5th Cir. 1993)(citations omitted).  Weg alleges constitutional violations based on a seizure without probable cause, false arrest,[20] excessive force under the Fourth Amendment, false imprisonment, failure to prevent false arrest and excessive force, civil conspiracy, and filing false charges.

   1.  *False Arrest*

   Weg contends that defendants violated his constitutional right to be free from false arrest when they arrested him for battery, criminal trespass, and resisting an officer.  A warrantless arrest, such as Weg's arrest in this case, must be based on probable cause.  *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996).  To prevail on a false arrest claim under Section 1983, Weg must prove that defendants lacked probable cause to arrest him.  *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001); *Sorenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998).  Probable cause exists for a warrantless arrest "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was

---

[20]   For purposes of simplicity, the Court will evaluate the probable cause claim with the false arrest claim, as the former is an element of the latter.

committing an offense." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)(citing *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)).  Probable cause is an objective determination that does not depend on the officer's subjective beliefs.  *Ho*, 94 F.3d at 935.  Courts must consider facts particular to the arrestee. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)(citing *Ybarra v. Illinois*, 444 U.S. 85 (1979)).

The Fifth Circuit has held that if probable cause exists for any of the charges made, then probable cause exists for the arrest, and the claim for false arrest fails.  *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).  The Court has credited the testimony of Gray, Livingston, Collins, and Jenkins that Weg threw an elbow at Deputy Gray when Weg was being escorted out of the courtroom.  Gray testified that Weg made contact with him. Deputy Livingston, in witnessing this act, had probable cause to arrest Weg for the battery charge.  Defendants therefore had probable cause for the arrest itself.  Accordingly, Weg cannot establish his claim for false arrest under Section 1983.

   2.   *Excessive Force*

The Fourth Amendment protects citizens against the use of excessive force.  U.S. Const. Amend. IV.  It is primarily directed at the initial act of restraining an individual's liberty, such as "making an arrest, investigatory stop, or other 'seizure' of [a] person." *Graham v. Connor*, 490 U.S. 386, 388

10

(1989)(investigatory stop); *see also Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010)(arrest).  To prevail on a Fourth Amendment excessive force claim under Section 1983, plaintiff must establish 1) an injury 2) which resulted directly from the use of force that was excessive to the need and 3) the force used was objectively unreasonable.  *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006)(citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).  "The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed."  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)(citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).  The amount of injury necessary to satisfy the "more than *de minimis*" requirement is directly related to the amount of force that is constitutionally permissible under the circumstances.  *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).  Courts consider whether force is objectively unreasonable "from the perspective of a reasonable officer on the scene" and not from hindsight.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Officers need to "make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 397.  Courts determine objective reasonableness by balancing the amount of force used against the need for that force.  *Ikerd*, 101 F.3d at 434.

Weg apparently argues that Deputy Gray used excessive force in guiding him out of the courtroom, before the incident that occurred at the rear door.  The Court rejects this argument because there was no evidence that Gray used excessive force as he guided the reluctant Weg toward the door.  Nor is there any evidence that Weg suffered any injury from his contact with Gray at this juncture.

Turning to the incident in which the deputies brought Weg down, the Court will not use hindsight in determining whether the force employed by the defendants was reasonable.  Weg resisted a court order to leave the courtroom, resisted being escorted out, was yelling and agitated, and finally, aggressively threw an elbow at Deputy Gray at the rear of the courtroom.  Deputy Livingston confronted a packed courtroom in which he saw Weg throw an elbow at Deputy Gray.  At that point, the deputies were not unreasonable in effecting the takedown without trying to reason with Weg first.  In the short time Deputy Livingston had to assess the situation, the Court finds that the force employed by defendants was not objectively unreasonable.  *See Dyer v. Sheldon*, 829 F. Supp. 1134, 1146 (D. Neb. 1993)(takedown not excessive when officer made a "split-second judgment" that takedown was an effective means of gaining control over a person).  Because Weg continued to resist defendants' efforts at restraining him after the takedown, defendants acted reasonably

12

in restraining Weg on the floor.  *See Arshad v. Congemi*, No. 08-30061, 2009 WL 585633, at *7 (5th Cir. 2009)(when plaintiff resisted less forcible methods of restraint it was not unreasonable to use a forcible takedown); *Estate of Phillips, III v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997) ("Restraining a person in prone position is not, in and of itself, excessive force when the person restrained is resisting arrest.").  *Cf. Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237 (5th Cir. 2009)(declining to find that the use of four-point restraints, or being hogtied, was "unnecessary, excessively disproportionate to the resistance they faced, or objectively unreasonable in terms of its peril" to the complainant). Although Weg argues that he was an attorney who posed no threat to the deputies, and that the deputies could have arrested him using verbal commands alone, the Court finds this contention unsupported by the evidence.

In reaching its decision, the Court finds the Fifth Circuit's reasoning in *Arshad v. Congemi* instructive.  Arshad, a physician, witnessed a car strike a young boy and went to the boy's side.  *Arshad*, 2009 WL 585633, at *1.  When EMT and law enforcement officials arrived at the scene, they repeatedly asked to see Arshad's credentials but she refused, telling them that it was "her scene."  *Id.*  An officer "told her that she could not touch the boy and repeatedly ordered her to step away from the

13

scene, but she refused and became increasingly agitated." *Id.*
When Arshad ignored the officer's instructions and attempted to
touch the boy, the officer pulled her away from the boy. *Id.*
Arshad continued to struggle, so the officer "swept her legs out
from under her, pinned her to the ground face-first, knelt on her
back, and cuffed her hands behind her back." *Id.*  Arshad ceased
to struggle after the officer handcuffed her. *Id.*

The Fifth Circuit determined that the officer had probable
cause to arrest Arshad and found his use of force to be
objectively reasonable in light of the objectively reasonable
arrest. *Id.* at *6.  Although "nothing appeared to be out of the
ordinary" when the officer arrived on the scene, "the situation
escalated quickly." *Id.* at *7.  The officer "attempted to rely
on verbal orders," but Arshad "repeatedly refused to comply" with
those orders and "grew increasingly agitated." *Id.*  The Fifth
Circuit held that "[i]n light of Dr. Arshad's behavior and her
resistance to less forcible methods, it was not objectively
unreasonable to use a forcible takedown to effect her arrest."
*Id.*  Here, both Judge Willard and Deputy Gray gave Weg repeated
orders to leave the courtroom, which Weg disregarded or actively
resisted.  Like *Arshad*, Weg's agitation increased as Deputy Gray
attempted to carry out Judge Willard's orders.  Whereas the
takedown in *Arshad* was not objectively unreasonable when Arshad
merely resisted efforts to keep her away from the injured boy,

14

Weg not only attempted to resist Deputy Gray's efforts but also went so far as to throw an elbow at him.  After witnessing these actions, Deputy Gray and Deputy Livingston cannot be said to have acted in an objectively unreasonable manner when they responded as they did, notwithstanding Weg's position as a lawyer. Furthermore, that Weg suffered bruised ribs as a result of the takedown does not render the force unreasonable.  Even if a forcible takedown results in injury, the injury is not actionable if the officers use no more force than necessary to effect the arrest.  *See Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009)(plaintiff who tried to take a pen from officer and then resisted arrest did not establish excessive force when officers pushed him onto their car, even though he suffered abdominal bruises and chest pain).  *Compare Richman v. Sheahan*, 512 F.3d 876, 883 (7th Cir. 2008)(forcibly restraining plaintiff in court was excessive when plaintiff was morbidly obese, defendants should have known the danger of his condition, and there was no urgency to remove him from the courtroom).  Accordingly, Weg failed to establish a claim of excessive force.

   *3.  False Imprisonment*

   Weg alleges that defendants are liable for false imprisonment as a result of his detention and arrest.  In order to prevail on a claim of false imprisonment under federal law, "plaintiff must prove (1) an intent by defendant to confine him,

(2) acts resulting in confinement, (3) plaintiff's consciousness of confinement or resulting harm, and (4) the deprivation of a constitutional right, such as the right not to be arrested or detained without probable cause." *Allen v. Normand*, No. 09-2825, 2009 WL 2448253, at *13 (E.D. La. Aug. 7, 2009)(citing cases). Because the Court finds that defendants had probable cause to arrest Weg and that defendants' force was not excessive, Weg fails to establish the deprivation of a constitutional right. Accordingly, his false imprisonment claim fails.

### 4.  Bystander Liability

Weg alleges that the individual defendant deputies are liable for their failure to intervene in the incident.  An officer at the scene who does not take reasonable measures to protect a suspect from another officer's use of force may be liable under Section 1983.  *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)(citing *Harris v. Chanclor*, 537 F.2d 203, 205-06 (5th Cir. 1976); *see also Thomas v. Frederick*, 766 F. Supp. 540, 555 (W.D. La. 1991).  The claim is essentially one of nonfeasance on the part of law enforcement officers.  *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir. 1983)(citing *Whirl v. Kern*, 407 F.2d 781, 788 (5th Cir. 1968)).  To establish a violation of this duty, Weg must show that an officer had a realistic opportunity to prevent a constitutional violation, and the officer's failure to act was

a proximate cause of his injury.  *Id.*  Because Weg has not established a constitutionally impermissible use of force, the Court finds that Weg has not established a claim of bystander liability.

    5.  *False Testimony and Conspiracy*

    Weg alleges that Deputy Gray is liable under Section 1983 for initiating a prosecution with false testimony in violation of his Fourth Amendment rights.  By itself, "causing charges to be filed without probable cause will not without more violate the Constitution."  *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003).  The filing of charges without probable cause can trigger events that give rise to a constitutional violation if that filing is accompanied by another constitutional violation. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009)(citing *Castellano*, 352 F.3d at 945).  Because the Court has already found that Deputy Gray had probable cause to arrest Weg, Weg's claim for initiating a prosecution with false testimony fails. Weg's claim for civil conspiracy fails for the same reason. *McCall v. Peters*, 108 Fed. Appx. 862, 863 (5th Cir. 2004)(civil conspiracy claim fails because plaintiff did not show "an actual violation of his rights or an agreement by the defendants to commit an illegal act")(citations omitted).

**B.   State Law Claims**

Weg asserts claims against defendants under Louisiana law for assault, battery, false imprisonment, intentional infliction of emotional distress, and defamation.  He also asserts liability against Sheriff Gusman, alleging that he is liable for the deputies' state law violations under the doctrine of *respondeat superior*.  The Court has supplemental jurisdiction over Weg's state law claims because the claims arise out of the same set of operative facts as his federal claims.  28 U.S.C. § 1367.

*1.   Assault*

Weg alleges that defendants assaulted him in the process of removing him from the courtroom.  "Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. Rev. Stat. 14:36.  Words alone do not constitute an assault, but "a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice." *Groff v. Southwest Beverage Co., Inc.*, 997 So.2d 782, 787 (La. App. 2008)(citing *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012, 1020 (La. App. 1987)).  "The use of force when necessary to make an arrest is a legitimate police function." *Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977). Here, the Court finds that Weg has not demonstrated assault under

18

Louisiana law because defendants had probable cause to arrest him and used reasonable force in effectuating his arrest.

   *2.   Battery*

   Weg alleges that defendants committed the state tort of battery when they brought him to the floor and placed him in handcuffs.  Under Louisiana law, "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff such contact, is a battery." *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987).  The intention does not have to be malicious, nor is intent to inflict actual damage required.  *Id.* It is sufficient if the actor intends to inflict a harmful or offensive contact without the other's consent.  *Id.*  In a claim of battery stemming from a lawful arrest, "the arrest itself cannot be the basis of a battery claim, but the 'use of excessive force in effecting the arrest becomes an actionable claim for damages.'" *Gray v. Horton*, No. 06-1070, 2008 WL 170664, at *7 (W.D. La. Jan. 18, 2008)(quoting *Zerbe v. Town of Carencro*, 884 So.2d 1224, 1228 (La. App. 2004)).  Although it is undisputed that defendants touched Weg, both escorting him out of the courtroom and in the anteroom, such force was a reasonable means of effectuating his arrest.  Weg has not established his battery claim.

3.   *False Imprisonment*

Weg alleges that defendants are liable for false imprisonment because his arrest was unlawful.  In Louisiana, a plaintiff "must show that he was detained and that the detention was unlawful" in order to prevail on a claim for false imprisonment.  *Gray v. Horton*, No. 06-1070, 2008 WL 170664, at *6 (W.D. La. Jan. 18, 2008)(citing *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 690 (La. 2006)).  An unlawful arrest is one made without probable cause.  *Id.* (citing *Zerbe v. Town of Carencro*, 884 So.2d 1224, 1228 (La. App. 2004)).  However, "if police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment."  *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977).  Because the Court finds that defendants had probable cause to arrest Weg, they are not liable for the state tort of false imprisonment.

4.   *Intentional Infliction of Emotional Distress*

Weg alleges that defendants committed the tort of intentional infliction of emotional distress when they arrested him and used force against him during the arrest.  In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the

20

defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1022 (La. 2000)(quoting *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).  The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209.  Here, there was no evidence of outrageous conduct by the deputies.  *See, e.g., Nicholas*, 765 So.2d at 1022 (conduct which is merely tortious or illegal does not rise to the level of extreme and outrageous conduct required in an action for intentional infliction of emotional distress). Further, Weg presented no evidence, such as medical diagnoses or ongoing treatment, that his emotional distress was severe. Accordingly, the Court finds that Weg failed to establish a claim of intentional infliction of emotional distress.

     5.  *Defamation*

     Weg asserts that he was defamed when Deputy Gray falsely accused him of committing the municipal offenses of criminal trespass, battery and resisting an officer.  In order to prevail on his defamation claim, plaintiff must establish: 1) defamatory words; 2) publication (communication to someone other than the person defamed); 3) falsity; 4) malice, actual or implied; and 5)

21

injury.  *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390
So.2d 196, 198 (La. 1980).  Defamatory words are "classified into
two categories: those that are defamatory *per se* and those that
are susceptible of a defamatory meaning."  *Costello v. Hardy*,
864 So.2d 129, 140 (La. 2004)(citations omitted).  Falsely
accusing a person of a crime is "considered defamatory *per se*,
and the elements of falsity and malice (or fault) [are] . . .
presumed, shifting the burden of proof to defendant to rebut the
adverse presumption."  *Kennedy v. Sheriff of E. Baton Rouge*, 935
So.2d 669, 675 (La. 2006).  "Malice (or fault), for purposes of
the tort of defamation, is a lack of reasonable belief in the
truth of the statement giving rise to the defamation."  *Costello*,
864 So.2d at 143.  At least one Louisiana court has held that "if
the arrest itself is not actionable, neither is a charge of
defamation to have arisen from that arrest."  *Roche v. Aetna Cas.
& Sur. Co.*, 303 So.2d 888, 890 (La. App. 1975); *see also O'Brien
v. Town of Glenmora*, 997 So.2d 753 (La. App. 2008)(upholding
summary judgment on defamation claim for police officer
defendants because they had probable cause to arrest
complainant).

 Here, defendants had probable cause to arrest Weg on the
grounds of battery and resisting an officer, and their statements

in this regard are not defamatory.  As to the trespass charge,[21] even if the charge ultimately proved legally deficient, the Court finds that Deputy Gray did not act with malice.[22]  Deputy Gray had probable cause to arrest Weg.  Deputy Gray also testified that he discussed the charges with his superior before he formally charged Weg.

Finally, the Court finds that Weg failed to demonstrate any injury resulting from the events that transpired on December 4, 2009.[23]  It is true that defamed plaintiffs may recover damages for "nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed."  *Costello*, 864 So.2d at 141.  In this regard, Weg presented no evidence of pecuniary loss but said that some clients and their families have expressed concern about the efficacy of his representation and whether he is scared of the

---

[21]    The criminal trespass statute states that "No person shall without authorization intentionally enter any structure, watercraft, or movable."  New Orleans Mun. Code § 54-153(a).

[22]    Under Louisiana law, conditional or qualified privilege is an affirmative defense to defamation.  *Kennedy*, 935 So.2d at 681-83.  Conditional privilege exists if (1) "the attending circumstances of a communication occasion a qualified privilege" and (2) the privilege was not abused by a display of malice or lack of good faith.  *Id.* at 682.  In this case, defendants did not plead this defense.

[23]    As Weg points out, he had a right to be in the courtroom.

judges.  Weg also introduced a newspaper article on the incident[24] and testified that he faces questions about the incident every couple of months.  These facts alone do not demonstrate injury required by Louisiana law.  Weg must demonstrate by competent evidence "that the defamatory statements were a substantial factor in causing [him] harm."  *Id.*

Here, Weg testified both on direct and on cross-examination that he had previously been ordered out of Judge Willard's courtroom.  Weg testified that in the five years since he has been in New Orleans, he has been ordered out of court three or four times, and has been held in contempt five times.  Indeed, two judges have previously refused to allow Weg to appear in their courtrooms, and one judge currently will not allow Weg to take on new clients in cases before him.  By virtue of these other events, even if Weg suffered some humiliation or mental anguish, he has not shown that the deputies' actions were a substantial factor in causing these injuries, as opposed to their resulting from his other confrontations with judges at Criminal District Court.  *See Taylor v. Town of Arcadia*, 519 So.2d 303, 306 (La. App. 1988)(no showing of injury when it was apparent that plaintiff would have suffered injuries even if the allegedly defamatory statement had not been made).  Nor has Weg presented credible evidence that his reputation actually suffered.

---

[24]     P. Ex. 6.

24

Although he testified that clients questioned whether he could zealously represent them, he presented no evidence that clients refused his services, fired him, or that his position at the Orleans Public Defenders Office was compromised.  Indeed, the newspaper article Weg submitted as evidence of harm was favorable to him.  Further, given Weg's history of adversarial derring-do, the Court frankly finds it incredible that any client would spurn his services on the grounds of excessive timidity.  Accordingly, the Court finds that Weg failed to prove his defamation claim.

> 6.  *Respondeat Superior*

Weg alleges that Sheriff Gusman is liable under Louisiana tort law under the doctrine of *respondeat superior* for the state law torts.  This doctrine renders an employer liable for damages caused by the fault of his employees, if the incident occurs while the employees are exercising the functions for which they are employed.  *See* La. Civ. Code art. 2320; *see also Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977)(employer liable for any injuries that result from officer's use of unreasonable or excessive force)(citing cases).  The Court finds that Sheriff Gusman is not liable under the doctrine of *respondeat superior* because the Weg has failed to establish the primary liability of the deputies.

**III. CONCLUSION**

IT IS ORDERED that there be a judgment in favor of defendants on all claims.

New Orleans, Louisiana, this 19th day of October, 2011.

_Sarah Vance_
_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE